**H.J. INC., a Minnesota corporation, d/b/a Anderson Dairy Supply, Appellant/cross-appellee,**

v.

**FLYGT CORPORATION, a subsidiary of ITT, Appellee/cross-appellant.**

**Nos. 90–5165, 90–5315.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 10, 1990.

Decided Feb. 6, 1991.

John A. Cochrane, St. Paul, for appellant/cross-appellee.

Grant S. Lewis, New York City, for appellee/cross-appellant.

Before McMILLIAN and FAGG, Circuit Judges, and STROM,* District Judge.

McMILLIAN, Circuit Judge.

H.J. Inc. appeals from a final order entered in the District Court [1] for the District of Minnesota awarding it attorney's fees in the amount of $82,597.80, costs and post-judgment interest. *H.J. Inc. v. Flygt Corp.*, Civ. No. 4–82–1277 (D.Minn. Feb. 28, 1990) (order). For reversal, H.J. argues the district court abused its discretion in reducing its requested attorney's fees. Flygt Corp., a wholly-owned subsidiary of ITT, cross-appeals from that part of the district court order awarding postjudgment interest. For reversal, Flygt argues the district court should have awarded post-judgment interest from the date of the final judgment entered following remand. For the reasons discussed below, we disagree with the arguments of H.J. on appeal and Flygt on cross-appeal and affirm the order of the district court.

FACTS

The underlying facts are not disputed. This is the second appeal in this litigation.

---

* The Honorable Lyle E. Strom, Chief Judge, United States District Court for the District of Nebraska, sitting by designation.

1. The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota.

The first appeal was on the merits and is reported at 867 F.2d 1531 (8th Cir.1989). H.J. was a distributor of agricultural equipment and machinery, including agricultural pumps manufactured by Flygt. After Flygt terminated H.J.'s distributorship, H.J. sued Flygt and its parent corporation, ITT, asserting antitrust violations and various state law claims. A jury found in favor of H.J. and awarded H.J. treble damages in the amount of $1.8 million and punitive damages on the state law claims. On appeal this court affirmed in part and reversed in part and conditionally remanded the case for new trial. *See id.* at 1537 (insufficient evidence of monopoly power in hoist market), 1540–43 (sufficient evidence of attempted monopolization through predatory pricing), 1542 (insufficient evidence of tying), 1543–44 (insufficient evidence of concerted activity), 1546–48 (insufficient evidence of breach of contract, fraud or conversion), 1548 (liability for tortious interference), 1549 (no liability on part of ITT), 1550 (sufficient evidence of damages in the amount of $105,774.00, to be trebled, for lost profits for hoist sales), 1550–51 (reversing and remanding for new trial on merits and for compensatory and punitive damages for tortious interference unless H.J. elected to proceed on the attempted monopolization claim). We also noted that H.J. was entitled to an award of costs and reasonable attorney's fees under 15 U.S.C. § 15(a). *Id.* at 1551 & n. 15.

On remand H.J. elected to proceed on its antitrust claim. H.J. then filed an application for attorney's fees in the amount of $328,088.50, covering all stages of the litigation, costs in the amount of $17,007.94, and postjudgment interest, at prevailing market rates, in the amount of $133,992.70. Counsel for H.J. sought attorney's fees based on rates ranging from $300 to $100 per hour and paralegal fees at $35 per hour. Flygt opposed the application for attorney's fees, arguing that the requested amount should be reduced in light of H.J.'s limited success, the hourly rates claimed were excessive, and there is no support for an award of postjudgment interest at a market rate.

The district court reduced the hourly rates claimed for senior attorneys from $300 to $225, $250 to $200, and $175 to $150. Slip op. at 5. The district court also reduced the lodestar by 20% because the entries on the submitted billing records were so vague that meaningful review was virtually impossible. *Id.* at 6. The district court reduced the lodestar by an additional 50% to reflect H.J.'s limited success on the merits and awarded H.J. attorney's fees in the amount of $82,597.80. *Id.* at 6–9. The district court awarded H.J. the full amount of its claimed costs ($17,007.94) and postjudgment interest from the date of the original judgment at the rate specified in 28 U.S.C. § 1961(a) (52–week Treasury bill rate immediately prior to date of judgment). *Id.* at 9. This appeal and cross-appeal followed.

## H.J.'S APPEAL

H.J. argues the district court improperly reduced the hourly rates claimed by counsel, ignored the prevailing hourly rates in the relevant community, which, it argues, is "nationwide" and composed of those lawyers who specialize in antitrust and complex commercial litigation on a contingency basis, improperly reduced the lodestar for inadequate documentation, and incorrectly analyzed the relationship between its successful and unsuccessful claims on the merits. H.J. argues that the district court's reduced award undercuts the important public policy of encouraging private litigants to bring actions to enforce the antitrust laws. We disagree.

We review the factual basis for a 15 U.S.C. § 15 award of attorney's fees under a clearly erroneous standard of review and a district court's determination of the amount of a fee award under an abuse of discretion standard. *E.g., International Travel Arrangers, Inc. v. Western Airlines, Inc.,* 623 F.2d 1255, 1274 (8th Cir.), *cert. denied,* 449 U.S. 1063, 101 S.Ct. 787, 66 L.Ed.2d 605 (1980); *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 115 (3d Cir.1976) (banc); *cf. Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983) (42 U.S.C. § 1988). The

approach followed by this circuit requires the calculation of a lodestar figure by multiplying a reasonable hourly rate by the number of hours worked. *E.g., Jorstad v. IDS Realty Trust*, 643 F.2d 1305, 1312–13 (8th Cir.1981). The district court may consider the attorneys' regular hourly rates as well as the prevailing community rate for similar work. *See Blum v. Stenson*, 465 U.S. 886, 895 & n. 11, 104 S.Ct. 1541, 1547 & n. 11, 79 L.Ed.2d 891 (1984) (skill of representation, difficulty of work performed, counsel's experience, counsel's reputation). The district court properly refused to adopt a "nationwide" community standard. *See Jorstad v. IDS Realty Trust*, 643 F.2d at 1313 (rejecting national standard). Here, the district court slightly reduced the requested hourly rates for senior attorneys on the basis of the quality of counsel's legal briefing and analysis. Slip op. at 4. We hold the district court did not abuse its discretion in reducing the requested hourly rates to reflect this. The district court is in the best position to assess the relative performance of the lawyers in the cases litigated before it.

■ H.J. also argues the district court improperly reduced the lodestar by 20% for inadequate documentation. "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. at 437, 103 S.Ct. at 1941. Inadequate documentation may warrant a reduced fee. *Id.; see, e.g., Ohio–Sealy Mattress Manufacturing Co. v. Sealy, Inc.*, 776 F.2d 646, 653 (7th Cir.1985); *International Travel Arrangers, Inc. v. Western Airlines, Inc.*, 623 F.2d at 1275. Incomplete or imprecise billing records preclude any meaningful review by the district court of the fee application for "excessive, redundant, or otherwise unnecessary" hours and may make it impossible to attribute a particular attorney's specific time to a distinct issue or claim. *Hensley v. Eckerhart*, 461 U.S. at 434, 437 & n. 12, 103 S.Ct. at 1939, 1941 & n. 12. Here, counsel's billing records included numerous entries such as "legal research" or "trial prep" or "met w/client." Some entries were so vague that the dis-

trict court could not determine with certainty whether they were related to this litigation, much less the claims upon which H.J. ultimately prevailed. Slip op. at 5. In the future the district court might consider directing the plaintiff to submit additional records before deciding to reduce the lodestar for inadequate documentation. Nonetheless, we cannot say that the district court abused its discretion in the present case by reducing the lodestar by 20% for inadequate documentation.

■ H.J. next argues the district court incorrectly analyzed the relationship between its successful and unsuccessful claims on the merits and should not have reduced the lodestar by 50%. Success on the merits is important to a determination of the reasonableness of a fee application. "[W]here the plaintiff [has] achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley v. Eckerhart*, 461 U.S. at 440, 103 S.Ct. at 1943; *see, e.g., National Farmers' Organization, Inc. v. Associated Milk Producers, Inc.*, 850 F.2d 1286, 1312 (8th Cir.1988), *cert. denied*, 489 U.S. 1081, 109 S.Ct. 1535, 103 L.Ed.2d 840 (1989); *Williams v. Mensey*, 785 F.2d 631, 640 (8th Cir.1986). The district court may either attempt to identify and then eliminate the hours spent on non-compensable claims or may simply reduce the award to account for the plaintiff's limited success. *See Hensley v. Eckerhart*, 461 U.S. at 436–37, 103 S.Ct. at 1941; *Roseborough Monument Co. v. Memorial Park Cemetery Ass'n*, 736 F.2d 441, 446 (8th Cir.), *cert. denied*, 469 U.S. 981, 105 S.Ct. 385, 83 L.Ed.2d 320 (1984).

■ We hold the district court did not abuse its discretion by reducing the lodestar to reflect H.J.'s limited success on the merits. As noted by the district court, H.J. enjoyed only limited success on the merits in this litigation. One defendant was dismissed; H.J. did not prevail on the majority of its antitrust claims; only one of H.J.'s state law claims was supported by sufficient evidence. H.J. had only limited suc-

cess on appeal, and its various motions for post-appeal relief were denied. We agree with the district court that these post-appeal motions contributed little to H.J.'s limited success on appeal and should not be compensated. *See, e.g., Sisco v. J.S. Alberici Construction Co.*, 733 F.2d 55, 58–59 (8th Cir.1984). The district court reduced the lodestar by 50%. Although we would prefer that any reduction for limited success be made on the basis of time spent on unrelated, unsuccessful claims, the district court was unable to conduct a more precise review in the present case because of inadequate billing records. We agree that "uncertainties should be resolved against the plaintiff, if arising because of imprecise recordkeeping without adequate justification." *International Travel Arrangers, Inc. v. Western Airlines, Inc.*, 623 F.2d at 1275, *citing Kane v. Martin Paint Stores, Inc.*, 439 F.Supp. 1054, 1056 (S.D.N.Y. 1977), *aff'd mem.*, 578 F.2d 1368 (2d Cir. 1978).

## FLYGT'S CROSS–APPEAL

█ Flygt argues the district court erred in awarding postjudgment interest from the date of the entry of the original judgment. Flygt argues that *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, — U.S. —, 110 S.Ct. 1570, 1576, 108 L.Ed.2d 842 (1990) (*Bonjorno* ), construed 28 U.S.C. § 1961 to provide that when a final judgment is reversed on appeal, postjudgment interest should run from the date of the judgment entered following remand.

In *Bonjorno* the plaintiffs argued that the judgment from which postjudgment interest should be calculated was that entered on August 22, 1979, and not the judgment entered following retrial in December 1981. The district court had found that the damages portion of the August 1979 judgment was not supported by the evidence and granted the defendants' motion for a new trial as to damages only. A limited retrial on damages resulted in a jury award on December 2, 1981, and judgment was entered on December 4, 1981. The district court's determination that the damages award was not supported by the evidence was not appealed by either party.[2] The Supreme Court held that under 28 U.S.C. § 1961 postjudgment interest properly runs from the date of the entry of judgment, which, the Court decided, was December 4, 1981, and not August 22, 1979. 110 S.Ct. at 1576. Because the August 22, 1979, judgment on damages was not supported by the evidence, that judgment could not have "ascertained" the plaintiffs' damages "in any meaningful way." *Id.* The plaintiffs' damages could not be ascertained until after retrial. Because "the purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant," *Poleto v. Consolidated Rail Corp.*, 826 F.2d 1270, 1280 (3d Cir. 1987), the Court concluded that Congress could not have intended postjudgment interest to be calculated from such a judgment. *Id.* Compare *FDIC v. Rocket Oil Co.*, 865 F.2d 1158, 1161 (10th Cir.1989) (per curiam) (affirming award of postjudgment interest from judgment entered on remand; original judgment completely reversed), *with Northern Natural Gas Co. v. Hegler*, 818 F.2d 730, 737 (10th Cir.1987) (affirming award of postjudgment interest from original judgment; reversal and remand for recalculation of damages using different dollar value), *cert. dismissed*, 486 U.S. 1063, 109 S.Ct. 7, 100 L.Ed.2d 937 (1988).

We believe the present case is distinguishable from *Bonjorno*. Here, unlike *Bonjorno*, we held that a portion of the damages awarded in the original judgment was supported by the evidence and accordingly affirmed that portion of the damages

2. The district court subsequently granted a defense motion for judgment notwithstanding the verdict as to a portion of the damages awarded by the jury. The plaintiffs appealed the reduction in damages, and the court of appeals reversed the partial grant of judgment notwithstanding the verdict as to damages, vacated the judgment, and reinstated and affirmed the judgment entered on December 4, 1981. The defendants' petition for rehearing en banc was denied, and the Supreme Court denied a petition for certiorari.

award. *See* 867 F.2d at 1550 (affirming single damages of $105,774.00 for attempted monopolization and as compensatory damages for tortious interference). Our remand for retrial on punitive damages involved the tortious interference claim only and did not affect the portion of the damages award that was affirmed. *Id.* at 1551 (tortious interference claim as alternative to attempted monopolization claim; judgment reversed and remanded for entry of judgment in favor of H.J. in amount of $105,774.00 unless antitrust claim waived and new trial on tortious interference claim). Thus, the original judgment did ascertain H.J.'s damages, at least in part, and the district court properly awarded postjudgment interest from the date of the entry of the original judgment.

Accordingly, the order of the district court is affirmed.