## In re WORKERS' COMPENSATION INSURANCE ANTITRUST LITIGATION.

### Civ. No. 4–85–1166.

United States District Court,
D. Minnesota,
Fourth Division.

July 28, 1991.

K. Craig Wildfang, Siegel, Brill, Greupner & Duffy, Minneapolis, Minn.

Andrew C. McIntosh, Minneapolis, Minn.

Vance K. Opperman, Opperman, Heins & Paquin, Minneapolis, Minn.

John F. Bonner, Jr., Bonner Law Offices, Minneapolis, Minn.

William D. Mahler, Steward, Perry, Mahler & Bird, Rochester, Minn.

John A. Cochrane, Cochrane & Bresnahan, St. Paul, Minn.

Arthur M. Kaplan, Fine, Kaplan & Black, Philadelphia, Pa.

Michael E. Bress, Dorsey & Whitney, Minneapolis, Minn.

John D. French, Faegre & Benson, Minneapolis, Minn.

Paul M. Dodyk, Cravath, Swaine & Moore, New York City.

Eugene M. Warlich, Doherty, Rumble & Butler, St. Paul, Minn.

Leon R. Goodrich, Oppenheimer, Wolff & Donnelly, St. Paul, Minn.

James R. Safley, Robins, Kaplan, Miller & Ciresi, Minneapolis, Minn.

William A. Montgomery, Schiff, Hardin & Waite, Chicago, Ill.

William F. Conlon, Sidley & Austin, Chicago, Ill.

Theodore J. Collins, St. Paul, Minn.

Lee L. Bennett, Hartford, Conn.

Jerome B. Pederson, Fredrikson & Byron, Minneapolis, Minn.

Stanley B. Block, Vedder, Price, Kaufman & Kammholz, Chicago, Ill.

Phyllis E. Andelin, Rosen, Wachtell & Gilbert, San Francisco, Cal.

David M. Balabanian, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal.

Robert R. Weinstine, Winthrop & Weinstine, St. Paul, Minn.

Robert L. Fleischman, Fireman's Fund Ins., Novato, Cal.

John Meyers, Bell, Boyd & Lloyd, Chicago, Ill.

William T. Corbett, Jr., Travelers Ins. Co., Hartford, Conn.

Maureen McGuirl, Gibson, Dunn & Crutcher, Los Angeles, Cal.

ORDER

ROSENBAUM, District Judge.

This matter is before the Court on plaintiffs' joint application for the award of attorneys' fees and reimbursement of litigation expenses. A hearing was held on April 29, 1991.[1] Based upon the files, records, and proceedings herein, and for the reasons set forth below, the Court concludes that plaintiffs' counsel is entitled to $11,281,950.00 in attorneys' fees and $1,127,070.03 in litigation expenses to date.

*Background*

A full recitation of the facts is unnecessary in this order. The nature of the case was set forth in some detail in this Court's orders of July 28, 1987,[2] and March 20, 1990.[3] In brief, plaintiffs filed this case in April, 1983, alleging antitrust violations by the defendant insurance companies and the Workers' Compensation Insurers Rating Association of Minnesota (WCIRAM) which had been organized pursuant to Minnesota Statutes, § 79.21 (1978). The proceedings have included eight years of litigation, a plethora of motions, one attenuated and a second successful trip to the court of appeals, defendants' unsuccessful petition for certiorari, contested class certification proceedings, extensive discovery, and several hundred docket entries. After concluding these prefatory steps, plaintiffs have settled (not without hotly contested post-settlement hearings) their claims against all named defendants. Plaintiffs' counsel have amassed for the benefit of their clients the considerable sum of $50,142,-000.00, plus interest, as a settlement fund in favor of the class. Plaintiffs' counsel now approach the Court seeking an award of fees from the common fund and full reimbursement of litigation expenses.

1. At the hearing, the Court also considered plaintiffs' and defendants' joint motion for final approval of several settlement agreements. The Court's order, dated May 8, 1991, disposed of those motions.

2. *In re Workers' Compensation Ins. Antitrust Litig.*, No. 4-45-1166 (D.Minn. July 28, 1987), *aff'd in part and rev'd in part*, 867 F.2d 1552 (8th Cir.1989), *cert. denied*, 492 U.S. 920, 109 S.Ct. 3247, 106 L.Ed.2d 593 (1989) and *cert. denied*, — U.S. ——, 110 S.Ct. 72, 107 L.Ed.2d 39 (1989).

3. *In re Workers' Compensation Ins. Antitrust Litig.*, 130 F.R.D. 99 (D.Minn.1990).

*Discussion*

■ It is settled that parties to a lawsuit may negotiate a settlement where defendants make a lump-sum payment including both monetary relief to the plaintiffs and attorneys' fees. *Evans v. Jeff D.*, 475 U.S. 717, 733, 106 S.Ct. 1531, 1540, 89 L.Ed.2d 747 (1986). In the case of a class action settlement, such an agreement is subject to the approval of the district court. Fed. R.Civ.P. 23(e).

■ Although this lawsuit was initiated under statutes which contain fee-shifting provisions,[4] the settlement agreements contain an explicit term creating a common fund.[5] As such, plaintiffs request attorneys' fees under the "common fund" doctrine.

The "common fund" doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980). One way to spread litigation costs proportionately among those who benefit from the lawsuit is to assess attorneys' fees against the entire common fund. *Alyeska Pipeline Service Co. v. Wilderness Soc'y*, 421 U.S. 240, 257–58, 95 S.Ct. 1612, 1621–22, 44 L.Ed.2d 141 (1975). In this case, the Court easily finds that plaintiffs' counsel have bestowed a substantial common benefit upon the plaintiff class by pursuing and funding this litigation. The Court further finds that the amount recovered is directly attributable to their efforts. Finally, the Court finds the fund large enough to support both reasonable attorneys' fees and a fair settlement distribution to the members of the plaintiff class.

■ While it is firmly established that attorneys' fees may be drawn from a common fund, the law has not refined the proper method by which the amount of compensation should be calculated. Plaintiffs seek a percentage of the recovery, a method which has been recognized by the Supreme Court in dicta. *Blum v. Stenson*, 465 U.S. 886, 900 n. 16, 104 S.Ct. 1541, 1549 n. 16, 79 L.Ed.2d 891 (1984).[6] Since *Blum*, a number of circuits have found the percentage of recovery method to be an acceptable method for calculating fee awards in common fund cases. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir.1989); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir.), *cert. denied*, 488 U.S. 822, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988); *Bebchick v. Washington Metro. Area Transit Comm'n*, 805 F.2d 396, 407 (D.C.Cir.1986). *See also* Court Awarded Attorney Fees, Report of the Third Circuit Task Force, 108 F.R.D. 237 (1985). Other courts continue to adhere to the "lodestar" approach, where the hours spent on the case are multiplied by a reasonable hourly rate of compensation. Under this method, the Court may utilize a multiplier to adjust that figure to reflect the complexity of the case or the quality of the work required. *Skelton v. General Motors Corp.*, 860 F.2d 250, 257 (7th Cir. 1988), *cert. denied*, 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989); *In re "Agent Orange" Product Liability Litig.*, 818 F.2d 226, 232 (2nd Cir.1987).

■ The award of attorneys' fees lies within the sound discretion of the trial court. *H.J., Inc. v. Flygt Corp.*, 925 F.2d 257, 259 (8th Cir.1991). The Court, having presided over this case for almost six full years, is in a unique position to evaluate the claim for attorneys' fees. The Court finds the percentage of recovery method to be equitable and appropriate in this case. Class members were well served by experienced attorneys who, at great cost and difficulty, obtained a favorable recovery for their clients.

---

4. Plaintiffs' complaint alleged violations of both the Sherman Act, 15 U.S.C. § 1, and the Minnesota Antitrust Law of 1971, Minnesota Statutes, §§ 325D.49, et seq.

5. *See, e.g.,* paragraph 2(a), "Agreement of Settlement between plaintiffs and defendants Twin

City Fire Insurance and Michigan Mutual Insurance Company."

6. In *Blum,* the Court commented "under the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class. . . ."

The Court finds that a 22.5% award from the common fund is appropriate and reasonable, considering the actual amount of time devoted to this case by plaintiffs' counsel, the complexity and duration of this litigation, the experience and ability of the attorneys involved, and awards in similar cases.[7] This view is supported by the response to the class notice which explicitly stated that attorneys' fees might be as large as 30% of the fund.[8] Of the 118,000 notices sent, not a single class member registered an objection to counsel's notice request for fees or to the proposed reimbursement for litigation expenses. The Court is satisfied that the amount represented by this percentage will adequately compensate counsel for the services performed in this litigation.[9]

The Court is acutely aware of the large number of dollars reflected in this award. A percentage, even a small percentage, of a number as large as $50,000,000.00 generates a great deal of money. The fees have been well earned. At the same time, the Court cannot be insensitive to the fact that a single percentage, in a case such as this, involves a half million dollars of the class members' potential recovery. The Court has carefully considered the balance.

Were it not for plaintiffs' counsel, in particular for counsel of this quality and tenacity, there would have been no fund at all. But the Court is confident that the award will well remunerate them for their efforts. The fee represents a respectable multiple of their current hourly fees, collected at 100 cents on the dollar. While this payment may have been slow in coming, it will come in a lump sum, and it is in cash. With all of these factors in mind, the Court finds the fees awarded to be full and fair.

Plaintiffs' counsel also move for reimbursement of $1,127,070.03 in litigation expenses incurred from the inception of the lawsuit to date. Expenses claimed include costs for discovery and experts' fees. The Court has closely examined these expenditures and finds the amounts to be adequately documented, proper, and reasonable. Counsel for plaintiffs may separately approach the Court for necessary expenses for distribution and administration of the class recovery.

*Conclusion*

Plaintiffs' counsel are jointly awarded $11,281,950.00 in attorneys' fees and $1,127,070.03 in litigation expenses to be paid from the common fund established pursuant to the settlement approved by this Court. Further, plaintiffs' counsel are awarded interest on the attorneys' fees from the date the full common fund was assembled.

---

7. In lawsuits involving common funds of smaller, but substantial size, courts have awarded percentage of recovery fees ranging between 15% and 27% of the common fund. *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F.Supp. 525 (E.D.Pa.1990) (25% fee from recovery of $22.769 million); *In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 736 F.Supp. 1007 (E.D.Mo.1990) (17.5% fee from recovery of $16.375 million); *In re Union Carbide Corp. Consumer Products Business Sec. Litig.*, 724 F.Supp. 160 (S.D.N.Y.1989) (27% fee from recovery of $31.7 million); *Mashburn v. National Healthcare, Inc.*, 684 F.Supp. 679 (M.D.Ala.1988) (19.5% fee from recovery of $17.425 million); *Rothfarb v. Hambrecht*, 649 F.Supp. 183 (N.D.Cal.1986) (22% fee from recovery of $11.475 million); *In re Warner Communications Sec. Litig.*, 618 F.Supp. 735 (S.D.N.Y.1985), *aff'd*, 798 F.2d 35 (2d Cir.1986) (25% fee from recovery of $18.6 million); *In re Pepsico Securities Litig.*, No. 82–8403 (S.D.N.Y. April 26, 1985) (1985 WL 44682) (20% fee from recovery of $21.5 million); *Philadelphia Electric Co. v. Anaconda American Brass Co.*, 47 F.R.D. 557, 559 (E.D.Pa.1969) (25% fee from recovery of $22.175 million).

8. *See* Notice of Class Action Regarding Workers' Compensation Insurance and Hearing on Proposed Settlements, pp. 11–12.

9. The Court, while taking a percentage approach, has also evaluated the fairness of the resulting figure by calculating the lodestar figure. Plaintiffs' counsel would be entitled to a lodestar fee of approximately $4,500,000. As such, the fee awarded is approximately 2½ times the lodestar amount. The Court finds that a multiplier of 2½ would be justifiable, given the contingent nature of the case, the results obtained and, in particular, the delay in receiving payment. *See Jorstad v. IDS Realty Trust*, 643 F.2d 1305 (8th Cir.1981) (listing contingency, results obtained, and delay as factors justifying an enhancement of the base lodestar fee).

The balance of the settlement funds shall be distributed to authorized claimants pursuant to the terms of the approved settlement. The Court reserves jurisdiction over all matters relating to the consummation of the settlement.